# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISON

B.B., a minor, *et al*,

        *Plaintiffs*,

Case No.: 5:18-cv-1332-JKP

v.

OFFICER J. PEREZ #14515, *et al*,

        *Defendants*.

_____/

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS

NOW COME Plaintiffs, by and through counsel, and state as follows:

Defendants have now moved for sanctions against Plaintiffs, seemingly primarily for Plaintiffs' failure to timely supplement the address of Defendants' ███████████ after Plaintiffs located the ███████████. Because Plaintiffs' failure is harmless, and where Defendants' have not demonstrated or even alleged any resulting prejudice from the late disclosure of the witness's home address, Defendants motion should be denied.

## INTRODUCTION

By way of background, Plaintiffs briefly will explain how we got here:

1. Plaintiffs learned there was a ███████████ who supposedly (according to the Defendant Officers) ███████████ ███████████ ███████████ The defendants obtained a search warrant and raided Plaintiffs' home.

2. Plaintiffs were told by Defendant Officers in their depositions that the day after this incorrect raid, ███████████."

3. This claimed disappearance did not make much sense to Plaintiffs but Plaintiffs could not prove the Defendants were being untruthful and so just kind of dealt with it.

4. Plaintiffs were not given ████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████' explanation of their phones being recycled also did not sit well with Plaintiffs, but Plaintiffs again could prove nothing so just dealt with it.

5. Defendants' claimed inability to provide an address ████████ Plaintiffs is another thing that did not really make much sense to Plaintiffs, but again Plaintiffs could prove nothing and so they just kind of dealt with it.

6. Plaintiffs did not believe that the ██████████████████████████ as the one he used with the Defendant Officers, because experience with these kinds of cases would suggest that ██████████ don't usually last very long – especially the phones used to ██████████████ ██████. This is especially usually true with ████████████████" and are no ██████████ ██████████ So, Plaintiffs did not even bother calling this number even after it was provided pursuant to a protective order. In hindsight, Plaintiffs really should have called this number months earlier than they did, even if it was a long shot.

7. In the meantime, Plaintiffs were searching on public records and social media and Google trying ██████████████████████████

8. As the discovery cutoff grew nearer and nearer, Plaintiffs grew more and more desperate to ██████████ since the bulk of their claims seemed to hinge on their ability to challenge search warrant affidavit, which could be most strongly argued ████████████████████████████ ██████████████ so undersigned counsel was almost ready to begin driving around the San Antonio area and knocking on doors to see if ████████████████████████████.

Almost out of desperation with less than two weeks before the discovery cutoff, undersigned ████████████████████████████████████████████████████. This truly was shocking to Plaintiffs.

9.  Undersigned Counsel and the ████ then had a brief introductory conversation ████████, both surprisingly and thankfully, did not hang up and even agreed to allow undersigned counsel to ████████████████████.

10. This was on January 16, 2020, less than two weeks before the discovery cutoff.

11. During this first day of communication with the CI, the CI said the following, in summary:

    a.  ████████████████████
    ████████████████████████████
    ████████████████████████████████████
    ████████████████
    ████████████████████
    ████████████████

12. Further, the ██████████ the documents referenced in his later-signed affidavit (provided by undersigned counsel for ████ to review at this meeting) and provided undersigned counsel with the information that ultimately was attested to by the ██████████████. The CI stated he would sign an affidavit but would not appear for a deposition. While Plaintiffs' counsel was typing up the affidavit, ██████ was reading along and telling Plaintiffs' counsel what to type.

13. Plaintiffs then attempted repeatedly to get the CI to make good on his word to sign the affidavit, ████████████████. Undersigned counsel was prepared to take any and all lawful actions to document ██████ critical testimony, as is certainly clear by now.

3

14. ▉▉▉▉ finally did sign the affidavit after the close of discovery. Plaintiffs researched the issue and believed they did not need to provide it to Defendants since discovery was over, but provided it anyway so as not to blindside them in response to their Motion for Summary Judgment. (See Exhibit 2, Declaration of Plaintiffs' Counsel). Had it been signed before the discovery cutoff, ▉▉▉ originally agreed, it would have been instantly produced to Defendants.

15. While much of this was going on, a Joint Advisory was due, which put Plaintiffs in a very tough spot: Though they have nothing but respect for defense counsel, Mr. Piatt, and his sterling reputation, Plaintiffs were extremely concerned that if they would show their cards to Mr. Piatt, the Defendant Officers would make it their business to ▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉ After all, ▉▉▉▉ had basically affirmed that many of Plaintiffs concerns about the Defendants were in fact well-founded, and that the Defendants were being quite untruthful in their testimony, affidavit, and reports. On the other hand, Plaintiffs did not want to say anything false to the court and certainly wanted to leave open the possibility of compelling ▉▉▉▉ a deposition if it came to that. Plaintiffs did their best to straddle this line.

16. Further, shortly after the Plaintiffs ▉▉▉▉▉▉▉▉▉▉▉ to the Defendants, Defendants suddenly found many hundreds of pages of discoverable records that had "inadvertently" not been produced. This included hundreds of pages of ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉ from ***before*** Plaintiffs' home ever came into the picture. This obviously proved what Plaintiffs believed all along: that there were ▉▉▉▉▉▉▉▉ that existed that were not being produced and that the texts ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, that relate to this case that were either not being provided or were destroyed, perhaps intentionally.

17. After some briefing and oral argument, the Court encouraged the parties to work out their differences and submit a joint advisory to the Court, which culminated with the Court re-opening limited discovery. As it turns out, the respective counsels actually do get along!

18. With discovery now re-opened, Plaintiffs have subsequently learned the following:

   a. Defendants "most likely" deleted ███████████████████████████████████

   b. ██████████████████, that he testified he "recycled", appears not to have been recycled based on the paperwork provided by the County. This phone is gone.

   c. ████████████ provided █████ to a mutually agreed upon data extraction expert but ████ provided this expert with the ███████. Intentional? Who knows?

   d. Defendants claimed to have had ████████████████████████████████████ ████ newly subpoenaed █████████████████████████████.

   e. Not only did the County not have a policy to preserve these kinds of ███████, but they actually had a policy in place to ***__destroy__*** these █████████████████████ █████████.[1] This policy is appalling and shocking.

   What is particularly infuriating: None of the above would have come to light, had Plaintiffs not tracked down █████ pressured him to sign his affidavit, and provided it to defendants.

## THE INSTANT MOTION

   As this Court is aware, discovery was recently extended in part for the specific purpose of deposing ██████. (ECF # 101; ECF # 102-1). The deposition of the ████ has now been completed, on

---

[1]Separately, but relevant to show the defendants' good or bad faith in general, who even knows how many criminal defendants were deprived of *Brady* material which was unlawfully deleted due to the deputies ███████████████████████ And the county did not even have a policy to preserve this evidence! This is shameful and outrageous and was very likely the reason the defendants are being so forceful and, dare we say, vengeful, to preempt any motion filing a sanctions motion.

August 5, 2020. As is explained herein, Plaintiffs' failure to supplement the address of Defendants' ████████████ is both substantially justified as well as demonstrably harmless under Fed. R. Civ. P. 37. As such Defendants' request for sanctions should be denied in full and their sought relief should be scrutinized in light of their own glaring discovery omissions.

While ████████████████████████████," (Exhibit 1, Deposition Transcript of Defendant Rodriguez, p. 60), as discussed in the attached declaration, ████ specifically told Plaintiffs' counsel that he was ████████████████████ ████████████████ (Exhibit 2, Declaration of Plaintiffs' Counsel). This clearly suggests Defendants had ████████ at the time Plaintiffs' counsel tracked him down and spoke with him. Plaintiffs' counsel only found ████ calling the phone number of ████████████. So, while ████████████████████ after the raid was unsuccessful, it is now apparent that Defendants likely never bothered ████████████ ████████████. (Exhibit 1, Deposition Transcript of Defendant Rodriguez, p. 19).

Despite claims of ████████████, apparently Defendants are now in contact with the ██. Defense counsel previously claimed he made "diligent efforts" to locate the ██, (ECF # 86, p. 4), and told the Court during the telephonic conference that he had no way to ████████ ████ecause Plaintiffs' counsel was withholding this vital information. In reality, the recently obtained ████████████ show that the Defendants did not even try ████████ after the 15th, the day after the raid, raising some questions about the testified term "d████ and counsel's "diligent efforts." (Exhibit 2, p. 60; ECF # 86, p. 4). Despite these claims, Plaintiffs called the ████████████ ***provided by the Defendants*** to ask about the investigation and warrant. It must be said that Plaintiffs admit that they did have an address that they should have

6

provided to the Defendants on January 16, 2020; this will be addressed herein, but suffice it to say, Plaintiffs fully believed that Defendants already had this address. Plaintiffs also can't help but wonder what Defense Counsel's "diligent efforts" consisted of, ███████████████████████

████████████████████████████████████████████████████████████████

      Also, it is important to note, that while Defendants now claim they really wanted to take ████████████████ it was noticed in February and that they even prepped for it, and are now asking for fees and costs to be assessed against Plaintiff's, Defendants had never made mention of trying to take his deposition during discovery nor had they even responded to any of Plaintiffs' counsel's emails regarding the deposition ███████. Even when Plaintiffs' counsel informed Defense counsel of the deposition and of its subsequent cancellation: no response. Only when Plaintiffs' counsel informed defense counsel of the affidavit acquired after the close of discovery did defense counsel for the first time make the claim that they really wanted to take ████████. Interestingly, while they now make a big deal about it, **Defendants did not ever ask for the** ██████████ **or for a copy of the subpoena** which was served on █████ Plaintiffs believed at the time that this was simply because the Defendants already had his address and had it all along.

      Further, now the Defendants have produced ██████████████████████████ which prove how seriously undersigned counsel takes his path to zealously represent his clients. Those ██████████████████████████████████████████ ██████████████████, which suggests that the CI is once again working with the Defendants. That means that ██████████████████████████████████ and either provided ███████ to them ████████████ or took so████████ and ████████████████ or their counsel. Either way, given that the Defendants' ██████████████████ have been at issue in the case, Defendants could have and should have just as easily, asked the ███ for

7

██████████████████████████████████████████ ***especially*** if they disprove Plaintiffs' allegations. These █████████████████████████████████████████████████████ ██████████ which have now somehow been ████████████████████████████ while in Defendants' custody and control. But they chose not to request these ██████████████ Instead, they opted to only request copies of the ██████████████████████

Further, Defendants' claim that they didn't know of their duty to produce the █████████ ████████████████ of the individual Defendants used to acquire probable cause prior to the raid on Plaintiffs' home in November 2018, until April 2020 after the close of discovery, is without merit. (ECF # 86, p. 2, ¶ 4, ¶ 10). Plaintiffs' discovery requests specifically ask Defendants for any ████████████████████████████████████████████████████████████████████████ ████████████████████████████████ (ECF # 86, p. 2, ¶ 2). However, this was not a true and accurate response by any means. The correct answer is apparently: ████████████ ████████████████ before and after, ██████████████████████ ████████████████████████████ Because Defendant Rodriguez only "located" his ████████████████, Defendants argue they had no duty to produce ██████████████████ ████████████████████████" and that they are "now aware of the materials until late April, 2020." (ECF # 86, ¶ 4, ¶ 10). However, under Rule 26(a)(1)(E), "[a] party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures." Plaintiffs requested text messages, Defendants claimed none existed. (Exhibit 3, Defendants' Discovery Responses, Rodriguez p. 8 # 11, Smith p. 7 # 11). Defendants' argument that they were not aware of ██████████████████████████ withheld from Plaintiffs related to █████████

without merit. (ECF # 86, ¶ 4-6).[2] These should have been disclosed during discovery as they are responsive to Plaintiffs' discovery requests. (Exhibit 4, Plaintiffs' Requests to Produce).

Further, the argument that he just "located" ████████ must fail because at no point did Defense counsel ever disclose this information to support its existence and temporary misplacement. Individuals generally don't "locate" things that they didn't know were missing. Once again, but for Plaintiff tracking down ████, Defendant Rodriguez may never have "located" ████████████████████████████████████████

This background is important to show that Defendants bring this motion for sanctions essentially for Plaintiffs' failure to supplement the address of Defendants' ████, while at the same time Defendants have still not produced all <u>substantive</u> information highly relevant to Plaintiffs' claims, i.e. ██████████████████ or an explanation for their disappearance. The address that was not produced should have been and we are prepared for whatever sanction the Court feels is appropriate for this mistake – but Plaintiffs really did believe that the Defendants knew this information, even if Mr. Piatt possibly did not. On the other hand, what excuse can possibly be made for the Defendants' deleted records, destroyed phones, and withheld discovery?

Further, ██████████████████████ from September and October 2018 are preserved, yet the ██████████████████████ When asked about this, the County's own Rule 30(b)(6) witnesses could not explain how this could happen but testified that the **most likely**

---

[2] It is worth noting that here Defense counsel admits he failed to provide substantive documents related ████████ and the investigation of Plaintiffs, allegedly received eight days prior to the close of discovery, <u>for approximately two months</u>, claiming the discovery he was required to produce "escaped" his "attention" do to "an exceptionally busy week." (ECF # 86, ¶ 5, ¶ 1; ECF # 68, p. 2) (emphasis added). Only once Plaintiffs acquired an ██████████████ did Defense "conduct[] a review of emails." (ECF # 86, ¶ 5). Further, defense counsel apparently missed this discovery again during his preparation for the ██████████████, a few weeks after he was allegedly provided the documentation related to ████ of which he failed to provide for two more months due his one busy week. (ECF # 86, ¶ 10, ECF # 104, ¶ 10).

explanation is that November 2018 ▮▮▮▮▮ either: 1) never existed (which the defendants testified they did exist and ▮▮▮▮▮ prove they exist as well); or 2) were ▮▮▮▮

    Lastly, the Court should be aware that per the Court's recent Order filed under seal, the parties jointly retained an expert to examine the two ▮▮▮▮▮ and the ▮▮▮▮▮ to determine if ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.



When there is an equipment change, a user can either start fresh ▮▮▮▮▮▮▮▮ or restore from a backup ▮▮▮▮▮▮▮. A closer look at the activity I have seen on Smith's phone prior to December 2019 is NOT ▮ of any kind, but rather (▮▮▮▮▮▮▮▮▮▮▮

It appears that all such ▮▮▮▮▮▮▮▮. However, Plaintiffs' counsel emailed the expert with some questions, and it appears that ▮▮▮▮▮ provided by Defendant Smith to the expert was not even ▮▮▮▮▮ used by Smith ▮▮▮▮▮▮▮ in November 2018 – it was only used for ▮▮▮▮ and ▮▮▮▮▮! The expert wrote:

## THE MEET AND CONFER

    Mr. Piatt, Mr. Grable, and undersigned counsel had a lengthy telephonic meet and confer on Friday July 24, 2020, for close to an hour about the instant motion. During that meet and confer, Defendants pointed to several issues that they believed are sanctionable and are described in their Motion. (ECF # 104). Plaintiffs address each in turn.

    **Allegation 1: Plaintiffs told the Court (ECF #64,) that they could not find ▮▮▮▮ which the defendants claim is not true, because Plaintiffs had tracked him down**. (ECF # 104, p. 4).

    Plaintiffs' exact words were as follows:

    **Plaintiffs' addition: The plaintiffs have requested to depose the ▮▮▮▮▮▮▮▮▮▮▮▮▮ defendant, but has been advised by the defendants that he has ▮▮▮▮▮▮▮ since even before this lawsuit was filed.**

For reasons which are articulated herein, Plaintiffs did not want to show their entire hand to Defendants as to their specific efforts in tracking down ████ and their conversations with him and what had been transpiring, out of fear that Defendants would get to ████████████ ████████████████████████████████ Plaintiffs' counsel that arose from the what he believed the ████████████, and had already done to him. (Exhibit 2, Declaration of Plaintiffs' Counsel). Plaintiffs therefore were stuck in a quandary: We felt we had good reason to believe we were dealing with Defendants willing to lie under oath, destroy and/or withhold evidence, ████████████████████, so we did not want to tip our hand to the Defendants any more than we are required to at least until we have ████████████████ ████████ yet we also must be honest with the Court and preserve our right to take the CI's deposition. So, Plaintiffs included what we believed had to be included, without saying more – in fact we included what ***the Defendants*** were claiming to be true, i.████████████████.

Plaintiffs do not hide from their conduct. If we messed up it not providing ████████ ████, we apologize and will accept whatever sanction the Court orders. But the relief being sought in this motion has little if anything to do with rectifying any such sanctionable conduct. Plaintiffs strongly express to the Court that they were in a very tough spot – a unique spot in litigation – and were not completely certain how to proceed. The ████████████ has since been completed, so what prejudice could possible even be claimed?

**Allegation 2: Plaintiffs' counsel lied to Defense counsel in a Feb. 5, 2020 email stating that Plaintiffs' counsel had been trying to track ████████ and may finally have him served – Defendants' counsel stated that Plaintiffs' counsel left out a material part of it.** (ECF # 104, p. 6-7).

Same as above; Plaintiffs did not want to tip their hand. Additionally, Plaintiffs were using the defendants' version of events against them: They were the ones falsely claiming that ████ ████████, so that is the version of events Plaintiffs went with in their communications with

11

Defendants and defense counsel. Further, this statement is true; Plaintiffs had no obligation to tell

Defendants about all their efforts ███████████████████

> **Allegation 3: Another email on Feb 5, 2020 stated that Plaintiffs' counsel got him served at a new address that "is not listed anywhere" and Defendants claim that Plaintiffs' counsel had it listed somewhere in my file so it is not "new."** (ECF # 104, p. 6-7).

"Not listed anywhere," means, literally listed or unlisted. In the same way that Peyton

Manning's address is "not listed anywhere." This was at an unlisted address. This discussion of

the semantics of the word "listed" and "new" does not provide any evidence that Plaintiffs'

intentionally attempted to conceal information from Defendants related to the ████████████████

nor does provide evidence of the requisite prejudice to justify sanctions. Plaintiffs ████████████

████████████████████████████████████████████████████████████

████████████████ in their supplemental document productions. To the contrary, ████████████████

████████████████ where he was served with a deposition subpoena. Further, and this really goes

to the heart of Defendants claims to have not ███████████████████ and any conceivable

prejudice: Defendants did not ask Plaintiffs ███████████████! It is possible that they asked much,

much, later, but certainly not at the time, presumably because they already had it.

> **Allegation 4: Plaintiffs' counsel emailed Defense Counsel that Plaintiffs' counsel will need to ███████████████████ if he does not appear. Then Plaintiffs' counsel didn't file that motion (because he got the affidavit) which means Plaintiffs' counsel lied to him.** (ECF # 104, p. 6-7).

Plaintiffs were going to file the show cause motion. ███████ informed Plaintiffs' counsel

that he would not sit for his deposition and he would not sign an affidavit. Plaintiffs' counsel then

gave ███████ two choices: Sign an affidavit, or Plaintiffs' counsel will show cause him for not

showing up to his scheduled deposition. ███████ eventually signed an affidavit of his testimony.

But again, if the defendants really wanted to ███████████████ why didn't they raise this issue at the

time? They instead said absolutely nothing in response to these emails.

**Allegation 5: The texts telling** <span style="background:black">   </span> **to sign the affidavit or we'd hall him to court. Defendants say that it is a bad faith notice**. (ECF # 104, p. 4-5).

Plaintiffs disagree; that is exactly what they were going to do if he would not either sign an affidavit or appear for a deposition. "A party may avail itself of any legal right." *Corley v. Southeastern Metals Mfg. Co.,* 2011 U.S. Dist. LEXIS 92958, at *15 (W.D. La. Aug. 19, 2011); *see id*. at *20-21 ("the threat of legal action is not an instrument of duress unless it is shown that the threatening party lacked a reasonable belief in its right of action, even though it may later be known that no such right of action existed."). As this Court noted, <span style="background:black">   </span> failed to comply with his deposition, the Court would show cause him and require him to appear before the Court. (ECF # 101, p. 3). Accordingly, requesting <span style="background:black">   </span> to sign an affidavit of his statements or be required to sit for a deposition of which the court would enforce, was not bad faith. It was fair warning.

**Allegation 6: Plaintiffs** <span style="background:black">   </span> **to not contact Mr. Piatt; Mr. Piatt says that is legal advice.** (ECF # 104, p. 11, 16-17).

There is no legal advice here. Not at all. During our call, Mr. Piatt said it is "legal advice" and undersigned counsel said it is a "friendly suggestion." Either way, nobody in the world could reasonably believe that this was "legal advice." In fact, Plaintiffs specifically <span style="background:black">   </span> it behooves him to retain counsel; Plaintiffs even offered to pay for the <span style="background:black">   </span>, if memory serves me correctly. Also, I never suggested to <span style="background:black">   </span>.

**Allegation 7: Plaintiffs didn't give Mr. Piatt the** <span style="background:black">   </span> **on January 16 and Plaintiffs didn't give him** <span style="background:black">   </span>.

As admitted herein, this is true, and Plaintiffs probably should have provided this <span style="background:black">   </span> on January 16. But it must be noted, that despite being notified of the subpoena and scheduled deposition in February, the Defendants NEVER asked for a copy of the subpoena or for the address <span style="background:black">   </span> was served. But Plaintiffs admit they should have provided this address, and this was an oversight based on the many moving parts. But Plaintiffs strongly believed at the time and still believe to this day based on statements <span style="background:black">   </span> that the defendants were already aware of

13

████████████████████████████████████████████████████████

████████████████████████████████████████

However, not serving the subpoena itself on defense counsel, and only informing him via email, was the undersigned's mistake. Plaintiffs' undersigned counsel does not usually write subpoenas personally - usually utilizing either deposition notices or third-party services to handle subpoenas. This was an honest mistake and oversight, and in hindsight Plaintiffs are a bit curious if the process server is supposed to serve a copy on the defense attorney. But the fact remains that Defendants knew Plaintiffs had served a subpoena on ████ in February and never asked for a copy of the subpoena or for the ████████. Any claimed prejudice now, is simply not real.

**Allegation 8: Plaintiffs lied to the court when they wrote, "Plaintiffs endeavored to take the deposition of the** ████████████████████ **until after the close of discovery."** (ECF # 104, p. 2, 4, 10, 13, 15).

This should have said "failed to serve him" instead of "failed to track him down." This was incorrectly worded, and Plaintiffs again apologize for this. As may be obvious to this Court by now, undersigned counsel has a staff who helps tremendously with his writing. This one line was likely lost in translation when the brief was written and undersigned counsel did not catch it before approving it for filing.[3]

Importantly, Defendants do not claim prejudice nor can they. Had they asked for ████████ when Plaintiffs notified Defendants on February 5, 2020 that had been ████████████████ Plaintiffs would have immediately provided it. The defendants did not ask because either a) they did not care; or b) they already had it. They could have responded to the undersigned's emails and asked for the subpoena if they cared. They could have demanded that the deposition go forward when notified that it would not; they didn't because they simply did not care. Only when Plaintiffs'

---

[3] This brief, on the other hand, is being written in large part by undersigned counsel. The different writing styles are probably obvious to the Court.

counsel informed them of the affidavit did they start to care. Given this factual background, Defendants request for sanctions must fail because Defendants do not and cannot demonstrate any prejudice from Plaintiffs' failure to provide the ██████████████████ .

## LAW AND ARGUMENT

Pursuant to Fed. R. Civ. P. 26, a party must provide the name and address of each individual likely to have discoverable information. Once Plaintiffs learned ████████████ , Rule 26 required Plaintiffs to disclose the address to Defendants. Because Plaintiffs believed Defendants already ███████████████████ to Plaintiffs' counsel that ████████ ██████████████ Plaintiffs inadvertently failed to disclose the ██████ ████████████████ .

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The failure to disclose the address relevant to this motion was both substantially justified as well as harmless.

Here, the ████████████ was properly identified as a witness by both sides in initial disclosures, the issue at the heart of Defendant's request for sanctions is that Plaintiffs did not supplement newly acquired "information," i.e. the ██████████████ Because Defendants identify zero prejudice resulting from Plaintiffs' failure, particularly where the deposition of the witness has already occurred, this motion should be denied. *See Tex. A&M Res. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (weighing the four harmlessness factors and concluding that the district had not abused its discretion by permitting certain evidence to be used at trial despite failure to disclose under Rule 26(a) because prejudice was "negligible"

where the witness had been "designated properly as a witness before trial" and where "any prejudice was cured by the approximately one month during which [the opponent] was allowed to examine and respond to the contested evidence").

First and foremost, Defendants motion for sanctions to ███████ as a witness is without merit because the "information" that Plaintiffs failed to provide is merely an ████. This request is wholly disproportionate to the offense and demonstrates another attempt by Defendants to do whatever it takes to hide the truth of their interactions with the informant. As discussed, the county's 30(b)(6) representative testified that the missing texts with the informant from the month of the raid were mostly likely either deleted or never created. These ████████████████ ██████ were withheld until after discovery, despite clear Interrogatories requesting ███ ██████████████████████████████████

Defendants cite no case law whatsoever to support their position that a critical witness should be struck for merely failing to provide an updated address where the witness was otherwise timely disclosed to the opposing party. The only "information" Plaintiffs "fail[ed] to provide" was an address, of which the evidence supports that Defendants already had in their possession. (Exhibit 2). Further, the deposition already happened. Failure to provide an address of a witness, when the witness was already deposed at the parties' joint request, is harmless. Failing to provide information that the opposing party already has, is substantially justified as well as harmless.

"In determining whether a violation of Rule 26 is harmless or substantially justified, the Fifth Circuit considers the following factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; (4) the explanation for the party's failure to disclose." *Maguregui v. ADP, LLC*, 2017 U.S. Dist. LEXIS 218007, at *3-4 (W.D. Tex. Apr. 10, 2017) (citing *Tex. A&M Res.*

16

*Found. v. Magna Transp., Inc.*, 338 F.3d at 402). "The basic purpose of Rule 26(e) has been to prevent a party from being prejudicially surprised by information presented at trial." *EEOC v. Mazzanti*, 2009 U.S. Dist. LEXIS 35340, at *7-8 (N.D. Miss. Apr. 1, 2009) (citing *Reed v. Iowa Marine and Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994); *Brower v. Staley, Inc.*, 306 F. Appx. 36 (5th Cir. 2008)). "A court's conclusion regarding whether a party's failure to comply with Rule 26(a) or (e) was harmless is a matter of discretion." *Hartford Fire Ins. Co. v. Sambrano (In re Sambrano)*, 440 B.R. 702, 707 (Bankr. W.D. Tex. 2010).

"[C]ourts have permitted evidence disclosed after the discovery deadline to be used where the other party has adequate time to prepare and would not suffer prejudice as a result." *In re Sambrano*, at 711 (refusing to exclude evidence not included on exhibit list where defendant was "already familiar with these documents"). Further, "courts have declined to exclude evidence or witnesses where the opposing party knew or should have known of an exhibit and its contents or the identity of a person and the scope of her testimony well before trial." *Drechsel v. Liberty Mut. Ins. Co.*, 2015 U.S. Dist. LEXIS 153336, at *5-6 (N.D. Tex. Nov. 12, 2015) (citing *Kellogg Brown & Root Int'l, Inc. v. Altanmia Commercial Marketing Co. W.L.L.*, 2008 U.S. Dist. LEXIS 97855, 2008 WL 5114962, at *15 n.22 (S.D. Tex. Dec. 3, 2008) (refusing to exclude evidence where the party "has known or should have known of the contents of the [witness] affidavit for months.").

Indeed, where both parties list a witness on their witness list, courts have noted the high level of difficulty for a party to "realistically claim prejudice or surprise." *EEOC v. Mazzanti*, at *9 (denying motion to strike witness testimony for failure to supplement where the purpose of Rule 26(e) was not "controverted" because the party "knew the[] individuals and the information each possessed."); *Maguregui v. ADP, LLC*, 2017 U.S. Dist. LEXIS 218007, at 6 (notwithstanding a violation of 26(a), "the Court finds that this witness should not be struck because Plaintiff also

listed this individual as a witness."); *In re Sambrano*, 440 B.R. at 708 (no unfair prejudice existed in allowing a witness to testify where the defendant included the witness in its witness list but also aimed to strike the witness from the plaintiff's witness list); *Id*. (collecting cases of harmless Rule 26 violations where opposing party was informed of significance of witness).

Defendants have not demonstrated any prejudice nor can they. While Defendants claim the ████████████████████████████████████████████████████████ deposition has taken place and Defendants have had yet another opportunity to gather facts from ██████████████████████████. At the same time Bexar County's 30(b)(6) deposition demonstrates further substantive falsehoods from Defendants: ████████████████████ ██████ or they were never actually created. While the discovery process in this case has been strained and contested, Defendants repeated failure to produce relevant evidence related to their communications with the informant when requested, and opting to produce them only when caught having failed to produce hundreds of pages of newly "located" records, is the cause of the issues – not Plaintiffs' failure to provide the ████████████████ of which the evidence shows Defendants already knew.

## CONCLUSION

Plaintiffs are aware of how bad things may initially look after reading the Defendants' instant motion. However, as this played out in real time, Plaintiffs' sole goal was to fight zealously and ethically for their clients, while not tipping their hand unnecessarily to Defendants, whom Plaintiffs were sincerely afraid of what they may do. In the event the Court finds we were not as forthcoming with the Court as we ought to have been, we sincerely apologize. We meant no disrespect to the Court or to Mr. Piatt. We were simply trying to represent our client and include as much information as was necessary without tipping our hand unnecessarily to the defense.

Defendants throw many other stones at Plaintiff's which can be viewed in a negative light, as Defendants have in their motion, or in a more neutral or positive light; Plaintiffs are attempting to focus on Defendants main allegations and more importantly on the on the relief sought in the instant motion. Importantly, the fact remains that the defendants do not claim they were prejudiced, nor do they explain how the relief they are seeking, i.e. the striking of a material witness whom they at no point during the discovery process attempted to depose, would cure anything.

Lastly, the court should know that we did finally take the ███████████ on August 5, 2020, though it was extremely difficult, ███████████████. ███. The transcript will be included as an exhibit once it becomes available. We started over an hour late when ████████████. Further, it is worth noting that Defendants wrote to the court that they too have supposedly been trying to ██████████, but could not track him down. (ECF # 86, p. 4). All things considered, the parties have all told the court that they want to take ███████ and now they have done that. ██████████████████ would not be equitable or fair, though we no longer oppose Defendants request to disallow the affidavit, since we now have █████████. For purposes of this motion, it bears mentioning that ██████████████ ████████████████████████████ ████████████████████████████ reason to believe that the defendants officers were not only aware of ████████████, but had perhaps been surveilling him.

For these reasons, Plaintiffs respectfully request this Court deny Defendants motion for sanctions.

//

//

19

Respectfully Submitted,

EXCOLO LAW, PLLC

Dated: August 5, 2020                    By:   /s/ Solomon M. Radner
                                               Solomon M. Radner, Esq.
                                               Attorney for Plaintiffs
                                               26700 Lahser Road, Suite 401
                                               Southfield, MI 48033
                                               (866) 939-2656
                                               sradner@excololaw.com

## CERTIFICATE OF SERVICE

I hereby affirm that on this 5th day of August 2020, that the foregoing document, were filed UNDER SEAL with the Court's CM/ECF electronic filing system, and that I served a copy of said documents via email upon the Defendants through their counsel, Robert Piatt at robert.piatt@bexar.org.

/s/ Solomon M. Radner

# EXHIBIT 1

CONFIDENTIAL

Page 1

1          UNITED STATES DISTRICT COURT

2          WESTERN DISTRICT OF TEXAS

3            SAN ANTONIO DIVISION

4    _____

5    B.B., a minor, et al,

6          Plaintiffs,

7       v.                        Case No.

8    OFFICER J. PEREZ #14515, et al.,   5:18-cv-1332-OLG

9          Defendants.

10   _____

11        VIDEOTAPED DEPOSITION OF JACOB RODRIGUEZ

12   DATE:          Thursday, October 31, 2019,

13   TIME:          10:30 a.m.

14   LOCATION:      Bexar County District Attorney's Office

15                  101 West Nueva, Civil Division

16                  Third Floor

17                  San Antonio, Texas 78205.

18   REPORTED BY:   Latrice Porter, Notary Public

19   JOB No.:       3618038

20

21

22

23

24

25

Page 19

1          A     It is going to be at the -- at the best rate

2     that I can read it, M-A-S-E-D-E.

3          Q     And he signed the cooperating individual

4     agreement on September 12, 2018?

5          A     Yes.

6          Q     That's just about two months before this

7     raid?

8          A     Correct.

9          Q     How many raids prior to this had he helped

10    you with?

11         A     No raids were done prior to that one with

12    him.

13         Q     Okay, had he violated this agreement in any

14    way prior to you signing this affidavit on November

15    14, 2018?

16         A     No.

17         Q     When was the last time you spoke to this

18    confidential informant?

19         A     On the 15th of November last year.

20         Q     Okay, so that was immediately -- wait, that

21    was immediately after this raid?

22         A     That was immediately after.

23         Q     What did you guys talk about?

24         A     We asked him what happened because are you

25    sure this was the house?  I can go back and talk about

Case 5:18-cv-05062-JLV-JKM Document 110-1 Filed 12/29/20 Page 24 of 61
CONFIDENTIAL

1          Q    Or did you just move on to something else?

2          A    No.

3                    MR. PIATT:  I'll object to the form of

4     the question.

5                    THE WITNESS:  The investigation was

6     still open.

7     BY MR. RADNER:

8          Q    Yeah?  What did you do to further the

9     investigation?

10         A    We looked into, with Deputy Smith, since he

11    had more access and more of Toy's operation, I asked

12    him to keep me in the loop with that.  After that,

13    Joshua disappeared.

14         Q    Now this was -- did you ask him how he knew

15    that that was the house?

16         A    Yes.

17         Q    And what did he tell you?

18         A    That he was taken there.

19         Q    So he was actually in the house?

20         A    He was actually in the house.

21         Q    He told you he was in the house?

22         A    That's what he told us.

23         Q    And he told you it's that house?  And then

24    he drove around, and said maybe it's a different

25    house, but then came back and said, no, it's

# EXHIBIT 2

## DECLARATION OF SOLOMON M. RADNER

STATE OF TEXAS       )
                       ) SS.
COUNTY OF BEXAR     )

        I, Solomon M. Radner, being first duly sworn, deposes and states as follows:

1. I declare under penalty of perjury that the matters declared herein are based upon my own personal knowledge and are true and correct.

2. This Affidavit is respectfully submitted in support of Plaintiffs' Response to Defendants' Motion for Sanctions in the matter of *B.B. a minor, et al. v. Perez, et al.,* Case No. 5:18-cv-01332, U.S. District Court for the Western District of Texas.

3. I first made contact via telephone with the Confidential Informant (hereafter "CI") involved in the above-referenced case, on January 16, 2020, less than two weeks before the discovery cutoff.

4. During this first day of communication with the CI, the CI stated the following to me, in summary:

   a. He was and is afraid of the police;

   b. The police are still watching him and know where he lives;

   c. The police had raided his house, with what he claimed was an invalid warrant, and essentially forced him to become a CI;

   d. He is still working with the police;

   e. He would sign an affidavit but would not appear for a deposition; and

   f. He reviewed the documents referenced in his later-signed affidavit (provided by myself for the CI to review) and provided me with the information that ultimately was attested to by the CI in the CI's affidavit.

5. I then attempted repeatedly to get the CI to make good on his word to sign the affidavit, which the CI helped write and reviewed several times before he approved it and it was finalized. I was prepared to take any and all lawful actions to document the CI's critical testimony, as is now clear.

6. The CI finally did sign an affidavit after the close of discovery. I researched the issue and believed my clients, the Plaintiffs, were not obligated to provide it to Defendants since

discovery was over, but provided it anyway so as not to blindside them in response to their Motion for Summary Judgment.

7.  Pursuant to 28 U.S.C. § 1746, I, Solomon M. Radner, declare under the penalty of perjury that the foregoing is true.

FURTHER, AFFIANT sayeth not.

By: */s/ Solomon M. Radner*
      Solomon M. Radner

Dated: August 5, 2020

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| B.B., A MINOR, LUCIL BASCO AS HIS NEXT FRIEND AND ON HER OWN BEHALF; AND RAYMOND BASCO, | § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | CASE NO. 5:18-cv-1332 |
| OFFICER J. PEREZ #14515; OFFICER E. ZANDER; OFFICER P. HARDEMAN; SERGEANT JAMES HANCOCK # 9130; OFFICER J. RODRIGUEZ #30053; OFFICER B. WOLFE #13031; OFFICER B. SMITH # 20790; OFFICER A. URIEGAS #4038; OFFICER E. RICHARDS #2801; OFFICER G. TREVINO; OFFICER C. DAVIS; JOHN DOE CONFIDENTIAL INFORMANT; DRUGS AND ENFORCEMENT AGENCY JOHN DOE AGENTS 1-10; BEXAR COUNTY SHERIFF'S OFFICE JOHN DOE OFFICERS 1-5; TEXAS DEPARTMENT OF PUBLIC SAFETY JOHN DOE OFFICERS 1-10. | § § § § § § § § § § § § § § § § § § § | |
| *Defendants* | § | |

## DEPUTY JACOB RODRIGUEZ'S ANSWERS TO PLAINTIFFS' INTERROGATORIES

To:  Plaintiffs, by and through their attorney of record, Solomon Radner, Excolo Law, PLLC; 26700 Lahser Road, Suite 401; Southfield, Michigan 48033.

Defendant Jacob Rodriguez serves the attached answers pursuant to Rule 33 of the Federal Rules of Civil Procedure.

1

Respectfully submitted,

JOE D. GONZALES
Bexar County Criminal District Attorney

By: /s/ Robert W. Piatt III
    ROBERT W. PIATT III
    SBN: 24041692
    Assistant District Attorney
    101 W. Nueva – Civil Division
    San Antonio, Texas 78205
    (210) 335-2139 – Telephone
    (210) 335-2773 – Fax
    robert.piatt@bexar.org

## CERTIFICATE OF SERVICE

I do hereby certify on the 27th day of June, 2019, I served the following answers by electronic mail upon the following:

Solomon Radner
EXCOLO LAW, PLLC
26700 Lahser Road, Suite 401
Southfield, MI 48033
T: (248) 291-9712
sradner@excololaw.com

/s/ Robert Piatt
Robert W. Piatt III

2

# ANSWERS

**INTERROGATORY NO. 1:** Identify the person(s) answering these interrogatories, including anyone giving assistance in any way.

**ANSWER: None, other than counsel.**


**INTERROGATORY NO. 2:** State the name, address, and years of attendance and graduation for each school you have attended, starting with high school and including college, junior college, technical school, and all law enforcement training, including any seminar training that might be characterized as "on the job" or "in-service training."

> For each, set forth the following:

> (a) The nature, substance, and description of the training you received, including the inclusive dates of the period during which you received training;

> (b) The name and address of each and any program or specialized school you attended to receive such training;

> (c) The dates of attendance at each such program or specialized school;

> (d) The nature and substance of the training offered at each such program or specialized school; and

> (e) The degree, license, or certificate, if any, that you received from each such program or specialized school.

**ANSWER:  I attended high school at St. Anthony's Seminary between 1994 and 1998.  I briefly attended the University of Texas at San Antonio in 1998; I attended San Antonio College off and on between 1998 and 2003.    Between 2005 and 2006 I completed coursework at San Antonio College for my peace officer's license.**

3

**INTERROGATORY NO. 3:** State the name and address for each of your employers since high school, setting forth:

    (a) The nature, substance, and description of your work and duties, including the name, address, title, and role for each individual who supervised you at each such place of employment and the inclusive dates of employment at such place of employment;

    (b) The reason for leaving each such place of employment.

**ANSWER: Defendant objects that the information sought in this interrogatory is not reasonably related to any claim or defense, and, accordingly, answering this interrogatory would require an unreasonable amount of time to fulfill in relation to the reasonable needs of the case. Subject to and without waiving the foregoing objection, Deputy Rodriguez responds as follows:**

    **I joined the Bexar County Sheriff's office in September of 2003. I spent the first eight and a half years in Detention. I then moved to Law Enforcement in 2012, first as a Patrol officer. While in Patrol I was assigned to a power shift unit between 2012 and 2016, during which time I became a hostage crisis negotiator (2014). I moved over to Narcotics in 2016, where I am today.**

**INTERROGATORY NO. 4:** Please provide the names, addresses, and rank of the individuals responsible for interviewing, investigating, hiring, and supervising you at the El Paso Police Department.

**ANSWER: I am not employed by the El Paso Police Department. You probably mean the Bexar County Sheriff's Office. My supervisors are Sergeant Hancock and Lieutenant Cartwright. These individuals may be contacted through my counsel.**


**INTERROGATORY NO. 5:** Have you ever been or are you currently the subject of or the defendant in any inquiry, complaint, disciplinary action, or other administrative action or of a lawsuit, either civil or criminal? If so, please set forth:

    (a) The nature, substance, and description of each inquiry, complaint, disciplinary action, or other action;

    (b) The name, address, and telephone number of each complainant/plaintiff.

**ANSWER: I was the subject of a Complaint in approximately 2013 by a civilian. I was involved in a traffic stop where a citation was issued to the complainant. During the stop, the complainant made a terroristic threat and an altercation ensued. The complainant claimed that I engaged in vehicle profiling. I was cleared completely by the Public Integrity Unit of the Bexar County Sheriff's Office in 2013. In 2015, I was the subject of a disciplinary action for speeding. I was given written counseling.**

5

**INTERROGATORY NO. 6:** Describe in complete detail your understanding of what this lawsuit is all about, specifically and chronologically how the incident, which gave rise to this lawsuit occurred, what you did or did not do, and what your involvement was, if any, with the allegations set forth in the complaint.

**ANSWER: Defendant objects to the request that he "[d]escribe in complete detail" his "understanding of what this lawsuit is all about" and "what [he] did or did not do" as both overly broad and vague. Defendant cannot possibly be expected to draft a missive for the Plaintiffs containing an entire chronology and an exhaustive explication of all aspects of "what this lawsuit is all about."**

**Subject to and without waiving the foregoing objection, Deputy Rodriguez responds as follows: A credible confidential informant, who in other matters provided corroborated information to the Bexar County Sheriff's Office, identified the house that was raided on November 14, 2018 as a stash house. It turns out the informant was mistaken. I spoke with the confidential informant, confirmed with the confidential informant that an individual named Saeid Aboudeh could be located in the house, typed up the search warrant for the search, and took the search warrant to the judge. I briefed the officers involved in the search on the layout of the residence and what to look for.**

**INTERROGATORY NO. 7:** Was there any reason to believe that plaintiff was involved in any illegal activity? Do you feel it was reasonable suspicion or probable cause? What illegal activity was it, cite to a statute, ordinance, or law. At what point did you believe that illegal activity was afoot, and how did you come to this belief?

**ANSWER:** **Based on information from a credible informant, we had reason to believe illegal activity was occurring in the residence; specifically, that drugs and drug money were being stored there, and that an individual named Saeid Aboudeh was guarding the house. A judge signed the search warrant.**

**INTERROGATORY NO. 8:** Did you observe or witness the allegations alleged in this lawsuit, being perpetrated by any others? If so, state specifically what you observed others do and identify them to the best of your ability including address, phone number, email address, badge number, employment, etc. This interrogatory includes but is not limited to the other parties.

**ANSWER:** **I was not present during the entry into the house. I arrived after it was determined that there were no drugs or drug money.**

**INTERROGATORY NO. 9:** Identify everyone whom you believe has any information related to the incident that is the subject of this litigation, state what information you believe they have, and why you believe they have this information. Identify all such individuals to the best of your ability including address, phone number, email address, badge number, employment, etc. This interrogatory includes but is not limited to the other parties.

**ANSWER: Defendant objects to the request that he identify each and every person with information "related to the incident" as overly broad and would require an unreasonable amount of time to fulfill in relation to the reasonable needs of the case.**

**Subject to and without waiving the foregoing objection, Deputy Rodriguez responds as follows: Please refer to Defendants' answers to interrogatories, initial disclosures, and all documents produced therewith or in response to requests for production.**

**INTERROGATORY NO. 10:** Identify all people with whom you have communicated about the incident that gives rise to this lawsuit, the allegations set forth in the operative complaint, and this lawsuit in general.

**ANSWER: Besides counsel, I had the following communications: I sent my report on the search to Chief Nancy Sanford. I also spoke with Deputy Smith about how the informant gave the wrong information. Deputy Smith and I took the confidential informant back to the residence and he pointed a second location that looked very similar to the residence.**

**INTERROGATORY NO. 11:** Have you published on any social media or sent any emails, texts, twitter messages, facebook messages, myspace messages, KiK messages, snapchat messages, WhatsApp messages, any other messages texts, emails, or any other written communication to anyone regarding, concerning, or referencing the incident that gives rise to this lawsuit, the allegations set forth in the operative complaint, or this lawsuit in general? If so, please attach copies, or state why copies cannot be attached. Further, for each source identified, state whether you would agree to sign an appropriate authorization so we may subpoena relevant content directly from the sources identified.

**ANSWER: No.**

**INTERROGATORY NO. 12:** Identify all cell phone companies with which you have possessed or regularly used a cell phone from the date of the allegations in this lawsuit through present day.

**ANSWER:** Defendant objects that this interrogatory is intrusive and harassing and seeks information that, if disclosed, would compromise the Defendant's safety as a law enforcement officer. Defendant further objects that the information sought in this interrogatory is not reasonably related to any claim or defense, and, accordingly, answering this interrogatory would require an unreasonable amount of time to fulfill in relation to the reasonable needs of the case.

**INTERROGATORY NO. 13:** Identify all email addresses with which you have sent or received any emails from the date of this lawsuit through today, and for each email address listed, identify the email's host server (IE, Google, Yahoo, etc). For each please state your username or username from the date of the allegations in this lawsuit through today, when each username was created, and whether you have deleted anything from any account, and if so, what was deleted and why.

**ANSWER:** Defendant objects that this interrogatory is intrusive and harassing and seeks information that, if disclosed, would compromise the Defendant's safety as a law enforcement officer. Defendant further objects that the information sought in this interrogatory is not reasonably related to any claim or defense, and, accordingly, answering this interrogatory would require an unreasonable amount of time to fulfill in relation to the reasonable needs of the case.

**INTERROGATORY NO. 14:** Do you have any social media accounts, such as Snapchat, Facebook, MySpace, Twitter, WhatsApp, KiK, or any others? For each please state your username or username from the date of the allegations in this lawsuit through today, when each

username was created, and whether you have deleted anything from any account, and if so, what was deleted and why.

**ANSWER:  Defendant objects that this interrogatory is intrusive and harassing and seeks information that, if disclosed, would compromise the Defendant's safety as a law enforcement officer.   Defendant further objects that the information sought in this interrogatory is not reasonably related to any claim or defense, and, accordingly, answering this interrogatory would require an unreasonable amount of time to fulfill in relation to the reasonable needs of the case.**

**INTERROGATORY NO. 15:** State with particularity any and all physical contact that either you had with Plaintiff(s) or that anyone else had with Plaintiff(s). Include in your response any medical attention or care, if any, that was provided by you or by anyone else to Plaintiff. Also state whether or not you believe any and all force used by you and everyone else was objectively reasonable, and if so, why.

**ANSWER:  I removed the handcuffs from Ms. Basco.  No medical care was necessary for anybody.  Any "force" used for detention purposes was reasonable in light of the search warrant and the needs of the search.**

**INTERROGATORY NO. 16:** In hindsight and utilizing all knowledge you have learned since the incident that gives rise to this lawsuit, is there anything you would have done differently? If so, what and why?

**ANSWER:  Defendant objects that the information sought in this interrogatory is not reasonably related to any claim or defense because the constitutionality of Defendant's**

10

actions are not evaluated from the perspective of "hindsight" and "utilizing all knowledge ... learned since the incident." Accordingly, answering this interrogatory would require an unreasonable amount of time to fulfill in relation to the reasonable needs of the case.

**INTERROGATORY NO. 17:** Sate in your own words whether you believe you did anything wrong, related to the allegation in the operative complaint.

**ANSWER:** No. Please refer to my Answer to Plaintiffs' complaint.

**INTERROGATORY NO. 18:** Based on your understanding of the incident that is the subject of this litigation and in general on your understanding of the allegations set forth in the operative complaint, which person, people, or entities are responsible, even slightly, for the damages and/or harm Plaintiff(s) alleged to have suffered? In other words, if you believe we sued the wrong people or entities, please identify who the correct ones are, and why you believe they bear responsibility.

**ANSWER:** Defendant objects that this interrogatory is a trap in that it presumes that Plaintiffs have suffered damages and harm and asks the Defendant to endorse that position. Accordingly, Defendant will not answer it.

**INTERROGATORY NO. 19:** At the time of the incident alleged in Plaintiffs' Complaint, was there in effect one or more insurance agreements, collective bargaining agreements, or any other agreements or understandings under which any person carrying on an insurance business or any insurance pool or self-insurance program or pool may be liable to satisfy part or all of a judgment that may be entered in this action or to indemnify or reimburse payments made to

satisfy the judgment? If so, please set forth a description of each such policy, including the name and address of the company issuing each such policy; the policy number of each such policy; the effective dates of the policy; the exact identity of each named insured as set forth on each such policy; the limits of bodily injury and liability coverage of each policy; the substance of any disclaimer of liability contained in each such policy; and any Reservation of Rights letters issued in this case.

**ANSWER: Defendant objects on the basis that neither the existence nor the amount of insurance held by a government entity is subject to discovery. Please refer to Section 101.104 of the Texas Civil Practice and Remedies Code.**

**INTERROGATORY NO. 20:** What is your understanding of who will be liable to pay for your defense, compensatory judgment, punitive judgment, costs and attorney fees in the event that the Plaintiff is victorious?

**ANSWER: I suppose Bexar County because I was acting under color of law.**

**INTERROGATORY NO. 21:** Did you hear directly from the informant any information which lead up to the search of Mrs. Basco's home? If yes, please describe in detail what information you discovered. If you did not hear any information directly from the informant, please describe in detail what information you heard regarding Mrs. Basco's home and from whom.

**ANSWER: The confidential informant contacted me perhaps a day or two before the search. He stated that there was a house by Ingram Park Mall that was a stash house. I conveyed this information to Deputy Bryan Smith. A few days later Deputy Smith called me to tell me that he was traveling with the confidential informant and that the confidential**

12

informant pointed out the house by the mall.  Deputy Smith reported to me that an individual, Saeid Aboudeh was there.  I sent the picture of Saeid Aboudeh to Deputy Smith and he showed it to the confidential informant.  The confidential informant confirmed that the individual was Saeid Aboudeh and that Aboudeh was at the house he identified.

**INTERROGATORY NO. 22:** Please list all other cases/investigations in which this informant gave information. Please also describe what information this informant gave in those cases. Did any of those cases result in an arrest or conviction.

**ANSWER:  The confidential informant provided information to Deputy Smith regarding a store on West Avenue and IH-10 in San Antonio, "Woody's Cell Phone Repair," where methamphetamine was being sold.  As it turns out, the San Antonio Police Department also was looking into this location.  Deputy Smith was able to confirm that this information was correct.  Recently several search warrants have been executed on multiple targets based on the information about the West Avenue location that was confirmed.  Several arrests were made, and the criminal cases are pending.  In another matter, the confidential informant told us that a certain individual was selling narcotics and confirmed that information by conducting a "buy" of drugs from that individual while we observed.  That case did not result in an arrest or conviction.**

**INTERROGATORY NO. 23:** Did you ever have any description of Saied Aboudeh before the search of Mr. and Mrs. Basco's home, and did you know Saied Abdoudeh was a male?

**ANSWER:  I had a picture of Aboudeh in addition to images of him that I found online.**

**INTERROGATORY NO. 24:** Why was Mrs. Basco handcuffed?

**ANSWER:  It is standard procedure when executing a search warrant under these circumstances.**

**INTERROGATORY NO. 25:** Were you present when the entry team forced entry into the home? Please describe in detail the entire episode from when they arrived at Mr. and Mrs. Basco's home until they left.

**ANSWER:  I was not present; I was still in route to the location.  I arrived as the entry team was walking out of the location.**

14

## VERIFICATION

I, Jacob Rodriguez, verify under penalty of perjury that the factual statements contained in the foregoing Answers to Interrogatories are true and correct, to the best of my knowledge, information and belief.

Executed on the __27th__ day of _____June_____, 2019.

_____
Jacob Rodriguez

**STATE OF TEXAS** §
**COUNTY OF BEXAR** §

Before me on this day personally appeared Jacob Rodriguez, proved to me through government identification to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __27th__ day of __June_____, 2019.

_____
NOTARY PUBLIC

MELEVA SPEEDON
Notary ID #12312204
My Commission Expires
June 30, 2021

My commission expires: _06/30/21_

15

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **B.B., A MINOR, LUCIL BASCO AS HIS NEXT FRIEND AND ON HER OWN BEHALF; AND RAYMOND BASCO,** | § § § § | |
| *Plaintiffs* | § § | |
| **v.** | § § | **CASE NO. 5:18-cv-1332** |
| **OFFICER J. PEREZ #14515; OFFICER E. ZANDER; OFFICER P. HARDEMAN; SERGEANT JAMES HANCOCK # 9130; OFFICER J. RODRIGUEZ #30053; OFFICER B. WOLFE #13031; OFFICER B. SMITH # 20790; OFFICER A. URIEGAS #4038; OFFICER E. RICHARDS #2801; OFFICER G. TREVINO; OFFICER C. DAVIS; JOHN DOE CONFIDENTIAL INFORMANT; DRUGS AND ENFORCEMENT AGENCY JOHN DOE AGENTS 1-10; BEXAR COUNTY SHERIFF'S OFFICE JOHN DOE OFFICERS 1-5; TEXAS DEPARTMENT OF PUBLIC SAFETY JOHN DOE OFFICERS 1-10.** | § § § § § § § § § § § § § § § § § § § | |
| *Defendants* | § | |

## DEPUTY BRYAN SMITH'S ANSWERS TO PLAINTIFFS' INTERROGATORIES

To: Plaintiffs, by and through their attorney of record, Solomon Radner, Excolo Law, PLLC; 26700 Lahser Road, Suite 401; Southfield, Michigan 48033.

Defendant Bryan Smith serves the attached answers pursuant to Rule 33 of the Federal Rules of Civil Procedure.

1

Respectfully submitted,

JOE D. GONZALES
Bexar County Criminal District Attorney

By: /s/ Robert W. Piatt III
       ROBERT W. PIATT III
       SBN: 24041692
       Assistant District Attorney
       101 W. Nueva – Civil Division
       San Antonio, Texas 78205
       (210) 335-2139 – Telephone
       (210) 335-2773 – Fax
       robert.piatt@bexar.org

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify on the 9th day of July, 2019, I served the following answers by electronic mail upon the following:

Solomon Radner
EXCOLO LAW, PLLC
26700 Lahser Road, Suite 401
Southfield, MI 48033
T: (248) 291-9712
sradner@excololaw.com

       /s/ Robert Piatt
       Robert W. Piatt III

<u>**ANSWERS**</u>

<u>**INTERROGATORY NO. 1:**</u> Identify the person(s) answering these interrogatories, including anyone giving assistance in any way.

**ANSWER: None, other than counsel.**

<u>**INTERROGATORY NO. 2:**</u> State the name, address, and years of attendance and graduation for each school you have attended, starting with high school and including college, junior college, technical school, and all law enforcement training, including any seminar training that might be characterized as "on the job" or "in-service training."

For each, set forth the following:

(a) The nature, substance, and description of the training you received, including the inclusive dates of the period during which you received training;

(b) The name and address of each and any program or specialized school you attended to receive such training;

(c) The dates of attendance at each such program or specialized school;

(d) The nature and substance of the training offered at each such program or specialized school; and

(e) The degree, license, or certificate, if any, that you received from each such program or specialized school.

**ANSWER: Defendant objects that the information sought in this interrogatory is not reasonably related to any claim or defense, and, accordingly, answering this interrogatory would require an unreasonable amount of time to fulfill in relation to the reasonable needs of the case.**

3

**INTERROGATORY NO. 3:** State the name and address for each of your employers since high school, setting forth:

    (a) The nature, substance, and description of your work and duties, including the name, address, title, and role for each individual who supervised you at each such place of employment and the inclusive dates of employment at such place of employment;

    (b) The reason for leaving each such place of employment.

**ANSWER: Defendant objects that the information sought in this interrogatory is not reasonably related to any claim or defense, and, accordingly, answering this interrogatory would require an unreasonable amount of time to fulfill in relation to the reasonable needs of the case.**

**INTERROGATORY NO. 4:** Please provide the names, addresses, and rank of the individuals responsible for interviewing, investigating, hiring, and supervising you at the El Paso Police Department.

**ANSWER: I am not employed by the El Paso Police Department.**

**INTERROGATORY NO. 5:** Have you ever been or are you currently the subject of or the defendant in any inquiry, complaint, disciplinary action, or other administrative action or of a lawsuit, either civil or criminal? If so, please set forth:

    (a) The nature, substance, and description of each inquiry, complaint, disciplinary action, or other action;

    (b) The name, address, and telephone number of each complainant/plaintiff.

**ANSWER: Defendant will supplement.**

**INTERROGATORY NO. 6:** Describe in complete detail your understanding of what this lawsuit is all about, specifically and chronologically how the incident, which gave rise to this lawsuit occurred, what you did or did not do, and what your involvement was, if any, with the allegations set forth in the complaint.

**ANSWER: Defendant objects to the request that he "[d]escribe in complete detail" his "understanding of what this lawsuit is all about" and "what [he] did or did not do" as both overly broad and vague. Defendant cannot possibly be expected to draft a missive for the Plaintiffs containing an entire chronology and an exhaustive explication of all aspects of "what this lawsuit is all about."**

**Subject to and without waiving the foregoing objection, Deputy Smith responds as follows: Please refer to my report, which was submitted to Plaintiffs through my counsel.**

**INTERROGATORY NO. 7:** Was there any reason to believe that plaintiff was involved in any illegal activity? Do you feel it was reasonable suspicion or probable cause? What illegal activity was it, cite to a statute, ordinance, or law. At what point did you believe that illegal activity was afoot, and how did you come to this belief?

**ANSWER: Based on information from a credible informant, we had reason to believe illegal activity was occurring in the residence; specifically, that drugs and drug money were being stored there, and that an individual named Saeid Aboudeh was guarding the house. A judge signed the search warrant.**

5

**INTERROGATORY NO. 8:** Did you observe or witness the allegations alleged in this lawsuit, being perpetrated by any others? If so, state specifically what you observed others do and identify them to the best of your ability including address, phone number, email address, badge number, employment, etc. This interrogatory includes but is not limited to the other parties.

**ANSWER:** **Defendant will supplement, but specifically as to the allegations in the lawsuit: Mrs. Basco was not in handcuffs for more than ten minutes. This is know because of the timing after the warrant was signed at 3:42 that day: it took time to brief the team beginning at about 4:00 p.m., then travel to the location. The location was secured at 4:17. I requested a case number at 4:32. Further, I observed the child running around playfully while all of the agents were there. He was hanging onto a DEA agent's leg and having a good time. I believe that agent was David Galvan.**

**INTERROGATORY NO. 9:** Identify everyone whom you believe has any information related to the incident that is the subject of this litigation, state what information you believe they have, and why you believe they have this information. Identify all such individuals to the best of your ability including address, phone number, email address, badge number, employment, etc. This interrogatory includes but is not limited to the other parties.

**ANSWER:** **Defendant objects to the request that he identify each and every person with information "related to the incident" as overly broad and would require an unreasonable amount of time to fulfill in relation to the reasonable needs of the case.**

**Subject to and without waiving the foregoing objection, Deputy Smith responds as follows: Please refer to Defendants' answers to interrogatories, initial disclosures, and all documents produced therewith or in response to requests for production.**

6

**INTERROGATORY NO. 10:** Identify all people with whom you have communicated about the incident that gives rise to this lawsuit, the allegations set forth in the operative complaint, and this lawsuit in general.

**ANSWER:** **I communicated about the incident in the form of a report that I prepared, which has been provided to Plaintiffs through my counsel.**

**INTERROGATORY NO. 11:** Have you published on any social media or sent any emails, texts, twitter messages, facebook messages, myspace messages, KiK messages, snapchat messages, WhatsApp messages, any other messages texts, emails, or any other written communication to anyone regarding, concerning, or referencing the incident that gives rise to this lawsuit, the allegations set forth in the operative complaint, or this lawsuit in general? If so, please attach copies, or state why copies cannot be attached. Further, for each source identified, state whether you would agree to sign an appropriate authorization so we may subpoena relevant content directly from the sources identified.

**ANSWER:** **No.**

**INTERROGATORY NO. 12:** Identify all cell phone companies with which you have possessed or regularly used a cell phone from the date of the allegations in this lawsuit through present day.

**ANSWER:** **Defendant objects that this interrogatory is intrusive and harassing and seeks information that, if disclosed, would compromise the Defendant's safety as a law enforcement officer. Defendant further objects that the information sought in this**

interrogatory is not reasonably related to any claim or defense, and, accordingly, answering this interrogatory would require an unreasonable amount of time to fulfill in relation to the reasonable needs of the case.

**INTERROGATORY NO. 13:** Identify all email addresses with which you have sent or received any emails from the date of this lawsuit through today, and for each email address listed, identify the email's host server (IE, Google, Yahoo, etc). For each please state your username or username from the date of the allegations in this lawsuit through today, when each username was created, and whether you have deleted anything from any account, and if so, what was deleted and why.

**ANSWER:** **Defendant objects that this interrogatory is intrusive and harassing and seeks information that, if disclosed, would compromise the Defendant's safety as a law enforcement officer. Defendant further objects that the information sought in this interrogatory is not reasonably related to any claim or defense, and, accordingly, answering this interrogatory would require an unreasonable amount of time to fulfill in relation to the reasonable needs of the case.**

**INTERROGATORY NO. 14:** Do you have any social media accounts, such as Snapchat, Facebook, MySpace, Twitter, WhatsApp, KiK, or any others? For each please state your username or username from the date of the allegations in this lawsuit through today, when each username was created, and whether you have deleted anything from any account, and if so, what was deleted and why.

8

**ANSWER:  Defendant objects that this interrogatory is intrusive and harassing and seeks information that, if disclosed, would compromise the Defendant's safety as a law enforcement officer.   Defendant further objects that the information sought in this interrogatory is not reasonably related to any claim or defense, and, accordingly, answering this interrogatory would require an unreasonable amount of time to fulfill in relation to the reasonable needs of the case.**

**INTERROGATORY NO. 15:** State with particularity any and all physical contact that either you had with Plaintiff(s) or that anyone else had with Plaintiff(s). Include in your response any medical attention or care, if any, that was provided by you or by anyone else to Plaintiff. Also state whether or not you believe any and all force used by you and everyone else was objectively reasonable, and if so, why.

**ANSWER:  Defendant will supplement.**

**INTERROGATORY NO. 16:** In hindsight and utilizing all knowledge you have learned since the incident that gives rise to this lawsuit, is there anything you would have done differently? If so, what and why?

**ANSWER:   Defendant objects that the information sought in this interrogatory is not reasonably related to any claim or defense because the constitutionality of Defendant's actions are not evaluated from the perspective of "hindsight" and "utilizing all knowledge … learned since the incident."  Accordingly, answering this interrogatory would require an unreasonable amount of time to fulfill in relation to the reasonable needs of the case.**

9

**INTERROGATORY NO. 17:** Sate in your own words whether you believe you did anything wrong, related to the allegation in the operative complaint.

**ANSWER:  No.  Please refer to my Answer to Plaintiffs' complaint.**


**INTERROGATORY NO. 18:** Based on your understanding of the incident that is the subject of this litigation and in general on your understanding of the allegations set forth in the operative complaint, which person, people, or entities are responsible, even slightly, for the damages and/or harm Plaintiff(s) alleged to have suffered? In other words, if you believe we sued the wrong people or entities, please identify who the correct ones are, and why you believe they bear responsibility.

**ANSWER:  Defendant objects that this interrogatory is a trap in that it presumes that Plaintiffs have suffered damages and harm and asks the Defendant to endorse that position.  Accordingly, Defendant will not answer it.**


**INTERROGATORY NO. 19:** At the time of the incident alleged in Plaintiffs' Complaint, was there in effect one or more insurance agreements, collective bargaining agreements, or any other agreements or understandings under which any person carrying on an insurance business or any insurance pool or self-insurance program or pool may be liable to satisfy part or all of a judgment that may be entered in this action or to indemnify or reimburse payments made to satisfy the judgment? If so, please set forth a description of each such policy, including the name and address of the company issuing each such policy; the policy number of each such policy; the effective dates of the policy; the exact identity of each named insured as set forth on each such policy; the limits of bodily injury and liability coverage of each policy; the substance of any

disclaimer of liability contained in each such policy; and any Reservation of Rights letters issued in this case.

**ANSWER: Defendant objects on the basis that neither the existence nor the amount of insurance held by a government entity is subject to discovery. Please refer to Section 101.104 of the Texas Civil Practice and Remedies Code.**

**INTERROGATORY NO. 20:** What is your understanding of who will be liable to pay for your defense, compensatory judgment, punitive judgment, costs and attorney fees in the event that the Plaintiff is victorious?

**ANSWER: I suppose Bexar County because I was acting under color of law.**

**INTERROGATORY NO. 21:** Did you hear directly from the informant any information which lead up to the search of Mrs. Basco's home? If yes, please describe in detail what information you discovered. If you did not hear any information directly from the informant, please describe in detail what information you heard regarding Mrs. Basco's home and from whom.

**ANSWER: Please refer to my report, which has been provided through my counsel.**

**INTERROGATORY NO. 22:** Please list all other cases/investigations in which this informant gave information. Please also describe what information this informant gave in those cases. Did any of those cases result in an arrest or conviction.

**ANSWER: The confidential informant provided information regarding a store on West Avenue and IH-10 in San Antonio, "Woody's Cell Phone Repair," where methamphetamine was being sold. As it turns out, the San Antonio Police Department also**

11

was looking into this location. I was able to confirm that this information was correct. Recently several search warrants have been executed on multiple targets based on the information about the West Avenue location that was confirmed. Several arrests were made, and the criminal cases are pending. In another matter, the confidential informant told us that a certain individual was selling narcotics and confirmed that information by conducting a "buy" of drugs from that individual while we observed. That case did not result in an arrest or conviction.

**INTERROGATORY NO. 23:** Did you ever have any description of Saied Aboudeh before the search of Mr. and Mrs. Basco's home, and did you know Saied Abdoudeh was a male?

**ANSWER: Please refer to my report.**

**INTERROGATORY NO. 24:** Why was Mrs. Basco handcuffed?

**ANSWER: It is standard procedure when executing a search warrant under these circumstances.**

**INTERROGATORY NO. 25:** Were you present when the entry team forced entry into the home? Please describe in detail the entire episode from when they arrived at Mr. and Mrs. Basco's home until they left.

**ANSWER: Yes. Defendant will supplement.**

12

# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISON

| | | |
|---|---|---|
| B.B., a minor, et al, | § | |
| | § | Case No.: 5:18-cv-1332-OLG |
| *Plaintiffs*, | § | |
| | § | Hon. Orlando L. Garcia |
| v. | § | |
| | § | |
| OFFICER J. PEREZ #14515, *et al*., | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS TO PRODUCE DIRECTED TO DEFENDANT OFFICER J. RODRIGUEZ

NOW COMES Plaintiffs, E.R and B.B., a minor, LUCIL BASCO as his next friend and on her own behalf; RAYMOND BASCO, by and through their Attorneys, SOLOMON M. RADNER and EXCOLO LAW, PLLC and under Rules 33 and 34 of the Federal Rules of Civil Procedure (FRCP) submit their First Set of Interrogatories and Requests to Produce to Defendant, OFFICER J. RODRIGUEZ, to be answered within thirty (30) days.

The requested information shall include all matters personally known to you or in your possession and control. Please note that while these Interrogatories are addressed to you, they are intended to and shall embrace and include any and all agents, servants, employees, representatives, private investigators and others who are in possession of or who may have obtained information for you on your behalf.

These Interrogatories shall be considered continuing pursuant to FRCP 26(e), and supplemental answers thereto shall be required if Defendant either directly or indirectly obtains further or different information from that upon which the answers are based from the time they are filed until trial of this matter.

1

**INTERROGATORY NO.25:** Were you present when the entry team forced entry into the home? Please describe in detail the entire episode from when they arrived at Mr. and Mrs. Basco's home until they left.

**ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:** Any and all police reports, records, notes, memorandums, witness statements, investigation reports, diagrams, video tapes, photos taken at the scene, and recordings regarding, or related to, the incidents which are the subject of Plaintiffs' Complaint.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 2:** Any and all documents that you maintain or maintained as personal records, notes and/or diaries regarding any matter set forth in Plaintiffs' Complaint, including all documents, emails, memoranda, notes, text messages, recordings, statements, video or audio recordings, or any other materials.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 3:** Any and all statement reports of experts retained by you to provide expert testimony concerning the incidents detailed in Plaintiffs' Complaint.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 4:** Any and all documents, procedures, emails, memoranda, notes, text messages, recordings, statements, video or audio recordings, or any other materials, that are referenced, requested, or described in Plaintiffs' Interrogatories, and/or that you reviewed to assist you in answering Plaintiffs' Interrogatories.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 5:** Any and all insurance policy and/or collective bargaining agreement documents defining the policy limits and any declaration pages, relative to any policy or agreement which may satisfied any part of any judgment in this matter. Attach any Reservation of Rights letters or any other writing(s) conveying any sort of limitation of coverage or indemnification in this matter.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 6:** Any and all emails, texts, tweets, facebook messages, myspace messages, KiK messages, snapchat messages, WhatsApp messages, any other messages sent you sent or received or viewed by you, or any other written communication whether or not you were a party to such communication, concerning, or referencing the incident that gives rise to this lawsuit, the allegations set forth in the operative complaint, or this lawsuit in general.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 7:** Please produce any contracts, memos, emails or any other digital or physical writings mentioning or referencing indemnification or defense of lawsuits.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 8:** Please produce any 'reservation of rights' letter

received in connection to the complained of incident that is the subject of this litigation.

**ANSWER:**

                        Respectfully submitted,

                        EXCOLO LAW, PLLC

By: */s/ Solomon M. Radner*
      SOLOMON M. RADNER (P73653)
      Attorney for Plaintiff
      26700 Lahser Road, Suite 401
      Southfield, MI 48033
      (248) 291-9712

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISON

| | | |
|---|---|---|
| B.B., a minor, et al, | § | |
| | § | Case No.: 5:18-cv-1332-OLG |
| Plaintiffs, | § | |
| | § | Hon. Orlando L. Garcia |
| v. | § | |
| | § | |
| OFFICER J. PEREZ #14515, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## CERTIFICATE OF SERVICE

On May 22, 2019, I served a copy of Plaintiffs' First Sets of Interrogatories and Requests for Production of Documents directed to Defendants James Hancock, J. Rodriguez, C. Davis, E. Richards, B. Smith, G. Trevino, A. Uriegas, and B. Wolfe, in the above captioned matter, by e-mail and by First Class Mail by enclosing the same in an envelope with sufficient postage to:

ROBERT W. PIATT, III
Assistant District Attorney
101 W. Nueva – Civil Division
San Antonio, Texas 78205

Email: robert.piatt@bexar.org

_____/s/ Kathryn Moore_____
Kathryn Moore